**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CALVIN COPELAND, | : | HABEAS CORPUS |
| Petitioner, | : | 28 U.S.C. § 2254 |
| | : | |
| v. | : | |
| | : | |
| TAMALA BROWN, Warden, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:14-CV-1801-WSD-JFK |

**UNITED STATES MAGISTRATE JUDGE'S
FINAL REPORT AND RECOMMENDATION**

Petitioner, Calvin Copeland, challenges via 28 U.S.C. § 2254 his 2010 Cobb County convictions for robbery and simple battery. The matter is before the Court on the petition [1] and Respondent's answer response [6]. For the reasons stated below, the undersigned recommends that the petition be denied and this action be dismissed.

I.   **Background**

As summarized by the Georgia Court of Appeals –

[T]he evidence showed that around 7:15 p.m. on January 20, 2010, 72-year-old Bettie Renfro and her 74-year-old husband, Dewey Renfro, arrived at the Austin Avenue Baptist Church in Marietta, Georgia for the regular Wednesday evening service. The pastor of the church and his wife, Arthur and Gail Reese, arrived at approximately the same time. As the four individuals met up in the well-lit parking lot, they noticed a man walking up the street and briefly greeted him. The man was wearing white pants, a striped knit top, and carrying two fishing poles. The two couples then walked up the ramp to the front door of the church. As the pastor's wife unlocked the door, the man walked up the steps and

grabbed Mrs. Renfro's purse.  Mrs. Renfro was carrying her purse on her shoulder, and as the man grabbed it, the purse slid down her arm, and she tried to hold on to it.  Mrs. Renfro testified at trial that this struggle "hurt [her] arm and [her] hand real bad, but [she] just tried to hold on as tight as [she] could."

Mr. Renfro, who had walked up the ramp directly behind his wife, chased after the man.  When Mr. Renfro yelled, "If you don't stop, I am going to shoot you," the man dropped the purse and ran off but did not drop the fishing poles.  Mr. Renfro retrieved the purse, and Mr. Reese drove and picked him up.  Mrs. Reese called the police, and City of Marietta Police Officer Gowerek arrived soon after.  The officer received a description of the purse-snatcher and drove in the direction in which the man fled.  He soon came up on a male in white colored clothing carrying two fishing poles and upon questioning, identified him as [Petitioner].  [Petitioner] told the officer that he was fishing, but the officer did not know of any nearby fishing area and the fishing poles did not work.[1]  Since [Petitioner] matched the description of the robber, Officer Gowerek drove [Petitioner] back over to the church with the fishing poles in the trunk of his car.  Once the officer parked the car in front of the church entrance, Mr. Renfro walked down the steps, looked through the car window and said, "That's him.  That's the guy that took the purse."  Mrs. Reese agreed, "He had the same clothes on, the same face, it was him."

Copeland v. State, 325 Ga. App. 668, 669, 754 S.E.2d 636, 638 (2014).

The Cobb County Grand Jury indicted Petitioner for robbery and simple battery, criminal action number 10-9-1141-33.  (Resp't Ex. 1 at 5-7, ECF No. 7-1).  Petitioner

---

[1]Sope Creek runs through the relevant area, and its use classification by the Georgia Environmental Protection Division is fishing. http://epd.georgia.gov/chattahoochee-river-basin-watershed-protection-plan (follow "Support of Designated Uses" hyperlink, E-10 (last visited Nov. 19, 2014).

proceeded to trial represented by Arthur H. Marateck and was found guilty on both charges.  On November 8, 2010, the court imposed a twenty-year sentence and a twelve month concurrent sentence, with fifteen years to be served in confinement. (Resp't Ex. 1/Part 3 at 100-03, ECF No. 7-3).  The court denied Petitioner's motion for a new trial, as amended through new counsel Angela Z. Brown.  (Id. at 107-08, 117-19, 125-36, 140).

Petitioner directly appealed, and on February 6, 2014, the Georgia Court of Appeals affirmed the judgment against Petitioner.  Copeland, 325 Ga. App. at 672, 754 S.E.2d at 640.

Petitioner filed his federal habeas corpus petition in which he asserts two grounds for relief:  the trial court violated his constitutional rights when it (1) denied his motion to suppress identification testimony and (2) denied his request to charge on the lesser included offense of theft by taking.  (Pet. at 5, ECF No. 1).

## II.   **Federal Habeas Corpus Standard**

A federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law.  28 U.S.C. § 2254(a).  The availability of collateral relief, however, is limited.  The federal habeas statue requires a petitioner to exhaust his state

3

court remedies and requires federal courts to give deference to state court adjudications. 28 U.S.C. § 2254(b)-(e). Further, the presumptions and the burdens have changed. The petitioner is presumed guilty, not innocent. Herrera v. Collins, 506 U.S. 390, 399-400 (1993). It is the petitioner's burden to establish his right to collateral relief. Blankenship v. Hall, 542 F.3d 1253, 1274 (11th Cir. 2008) ("[I]n habeas proceedings . . . the petitioner bears the burden of establishing his right to relief[.]"), cert. denied, _ U.S. _, 131 S. Ct. 1041 (2011).

> A district court may not grant federal habeas corpus relief unless
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). To "exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Ward v. Hall, 592 F.3d 1144, 1156 (11th Cir. 2010). If a state prisoner has not properly availed himself of state remedies, federal habeas corpus review of his claims generally is barred (1) if, based on adequate and independent state law, the state court clearly and expressly has found that, because the petitioner failed to follow state rules, state law procedurally bars consideration of a

4

claim, or (2) if a claim has not been raised in state court and it is clear that the state courts would refuse, because of a state procedural bar, to allow any further attempts at exhaustion.  Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

The federal bar may be overcome if the federal petitioner shows (1) cause for the default and actual prejudice or (2) proof of actual innocence.  Ward, 592 F.3d at 1157.  "To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his [or counsel's] effort to raise the claim properly in state court" or that the matter was not raised because of ineffective assistance of counsel.  Id. (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  A petitioner also must show prejudice – that the error complained of "worked to his *actual* and substantial disadvantage, infecting [the] entire [proceeding] with error of constitutional dimensions."  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (emphasis in original) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (internal quotation marks omitted).  To make a credible showing of actual innocence, a petitioner must demonstrate "that it is more likely than not that 'no reasonable juror would have convicted him in light of . . . new evidence'" – such as "'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]'"  Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1017 (11th Cir.

5

2012) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 324, 327 (1995)), <u>cert. denied</u>, _ U.S. _, 133 S. Ct. 351 (2012).

For exhausted claims, federal court review under § 2254 is "greatly circumscribed and is highly deferential" to the state court.  <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (en banc) (quoting <u>Payne v. Allen</u>, 539 F.3d 1297, 1312 (11th Cir. 2008)) (internal quotation marks omitted), <u>cert. denied</u>, _ U.S. _, 132 S. Ct. 2727 (2012).  Federal relief is limited to petitioners who demonstrate that the state court adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2).  A state court's factual determinations are presumed correct unless the petitioner presents clear and convincing evidence that those determinations were erroneous.  28 U.S.C. § 2254(e)(1).

"A state court's adjudication is contrary to federal law if it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'"  <u>Wellons v. Warden</u>, 695 F.3d 1202, 1206 (11th

Cir. 2012) (alterations in original) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)), <u>cert. denied</u>, _ U.S. _, 134 S. Ct. 177 (2013). "A state court's adjudication is unreasonable if the state court 'identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" <u>Id.</u> (alteration in original) (quoting <u>Williams</u>, 529 U.S. at 413). To show unreasonableness, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. 86, _, 131 S. Ct. 770, 786-87 (2011).

Further, even if a federal petitioner meets § 2254(d)'s rigorous standard – "a precondition to the grant of habeas relief . . . , not an entitlement to it[,]" the court must then determine whether the error is harmless under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 631 (1993). <u>Fry v. Pliler</u>, 551 U.S. 112, 119, 121 (2007) ("We hold that in § 2254 proceedings a [federal] court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in <u>Brecht</u>[.]").

This Court has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be resolved.  As Petitioner has made no showing as required by 28 U.S.C. § 2254(e)(2), no federal evidentiary hearing is permitted, and the case is now ready for disposition.

**III.**   **Discussion**

    **A.**   **Ground One:  Motion to Suppress Identification Testimony**

        **1.**   **State Court History**

Represented by Marateck, Petitioner filed a motion to suppress in which he argued that it was a violation of due process to allow as evidence identification testimony that was based on a one-person show-up.  (Resp't Ex. 1/Part 2 at 69-72, ECF No. 7-2).  At the suppression hearing, the state called Officer Gowerek,[2] who testified that Mr. Renfro told him the following:  (1) he was with his wife on the steps leading up to the church when his wife's purse was snatched;[3] (2) he chased the robber until he dropped the purse and a few minutes later he saw the robber walking back

---

    [2]The Court uses the spelling of Officer Gowerek's name that was used by the Georgia Court of Appeals.  Copeland, 325 Ga. App. at 669, 754 S.E.2d 638.

    [3]Mr. Renfro testified at trial that, prior to the robbery, he talked with Petitioner for a moment and that Petitioner had been fairly close and "talked very nice."  (Resp't Ex. 3a at 55-56, ECF No. 7-5).

toward the church but then lost sight of him; and (3) the robber was wearing white or light colored pants and a light-colored sweatshirt and was carrying two fishing rods. (Resp't Ex. 2 at 6, 9, 11, 13, ECF No. 7-4).  Gowerek testified (1) that he stopped and detained Petitioner, who he found walking nearby and who fit the Renfros' description of the robber; (2) that he drove Petitioner back to the scene of the crime for a one-man show-up approximately twenty-five minutes after the crime occurred ; and (3) that Mr. Renfro identified Petitioner with one hundred percent certainty.  (Id. at 8, 9, 19, 22).

Petitioner argued at the hearing that the one-person show-up was inherently suggestive and that the state had not met its burden of showing that identification testimony was reliable.[4]  (Id. at 25-26).  The state argued that Petitioner failed to show that the show-up was impermissibly suggestive.  (Id. at 26-27).  The trial court found that the show-up was not impermissibly suggestive and denied the motion.  (Id. at 29).

On direct appeal, Petitioner argued that the trial court's denial of his motion to suppress the identification testimony was error because (1) the pre-trial identification procedure was unnecessarily suggestive in violation of due process;[5] (2) the court,

---

[4]Petitioner called no witnesses at the hearing on his motion to suppress.

[5]Although Petitioner's argument on direct appeal  focused on the use of hearsay at the suppression hearing and only *mentioned* the law on impermissibly suggestive identification procedures, (Resp't Ex. 5 at 7, ECF No. 7-10), Respondent in this Court

contrary to Georgia law, allowed the government to use hearsay testimony to meet its burden of showing that the identification testimony was reliable, which stopped Petitioner from cross-examining the witnesses at the hearing to bring out evidence favorable to suppression; and (3) the court asked Gowerek questions, which also helped the state meet its burden.  (Resp't Ex. 5 at 7-11, ECF No. 7-10).

The Georgia Court of Appeals found that there was no error under Georgia law in allowing hearsay testimony or in the trial court asking Gowerek questions during the hearing on the motion to suppress.  <u>Copeland</u>, 325 Ga. App. at 670 and n.2, 754 S.E.2d at 638 and n.2.

### 2.    **Parties' Arguments**

Petitioner argues that he was denied his constitutional rights when the trial court, based on hearsay testimony, denied his motion to suppress identification testimony that was tainted by the pre-trial one-person show-up.   (Pet. at 5). Respondent argues that the Court should defer to the Georgia Court of Appeals' decision.  (Resp't Br. at 6).

---

treats Petitioner's due process argument as being properly presented on direct appeal, (Resp't Br. at 2, ECF No. 6-1), and the Court does not find otherwise.

10

3.    **Law and Disposition**

On direct appeal, Petitioner raised and exhausted his hearsay claim as a matter of state law and did not raise a federal constitutional claim regarding the trial court's questions during the suppression hearing, and the state appellate court decided those issues under state law. See Swarthout v. Cooke, _ U.S. _,_, 131 S. Ct. 859, 861 (2011) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)) (internal quotation marks omitted)). Petitioner procedurally defaulted these claims by failing to raise them as federal claims in his direct appeal. Because Petitioner presents nothing to overcome his default, they are not further addressed.[6]

To the extent that Petitioner adequately raised his due-process identification claim in the Georgia Court of Appeals, the Court finds that the state appellate court implicitly rejected the claim and reviews that rejection to determine whether it resulted in a decision that is contrary to clearly established federal law or an unreasonable application thereof. See Harrington, 562 U.S. at _, 131 S. Ct. at 784 ("Where a state

---

[6]The Court does note, however, that under federal law, "[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." United States v. Franklin, 284 F. App'x 701, 703 (11th Cir. 2008) (quoting United States v. Raddatz, 447 U.S. 667, 679 (1980)) (internal quotation marks omitted).

court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."); Ventura v. Att'y Gen., Fla., 419 F.3d 1269, 1286 n.7 (11th Cir. 2005) (noting that an unexplained state adjudication must be deferred to as long as it "resulted in a decision that is neither contrary to nor involves an unreasonable application of Supreme Court precedent" (internal quotation marks and citation omitted)).

Federal due process does not allow evidence that is based on an out-of-court identification if the out-of-court procedure was "unnecessarily suggestive" and it gave rise to an "irreparable misidentification." Jones v. Kemp, 794 F.2d 1536, 1539 (11th Cir.1986) (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967)) (internal quotation marks omitted).  In examining the admissibility of identification testimony that follows out-of-court identifications, the court must first decide whether the out-of-court identification procedure was "impermissibly suggestive[.]"[7] United States v. Smith, 459 F.3d 1276, 1294 (11th Cir. 2006) (quoting United States v. Russo, 796

_____

[7]Generally, in seeking to exclude identification testimony, the defendant bears the burden of showing that the identification procedure was impermissibly suggestive. Unites States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992); United States v. Henry, 939 F. Supp. 2d 1279, 1283 (N.D. Ga. 2013) ("Once Henry carried his burden of showing that the eyewitness identification was derived through 'impermissibly suggestive' means, the burden shifted to the Government to show that the identification was reliable independent of the suggestive procedure.").

AO 72A
(Rev.8/82)

F.2d 1443, 1452 (11th Cir.1986)) (internal quotation marks omitted).  Although a one-person show-up is an inherently suggestive procedure, it may not be impermissibly so in certain circumstances, such as when a sole eye-witness is at risk of dying or when an officer has detained a suspect at the scene and does not want to mistakenly arrest an innocent person.  Brisco v. Ercole, 565 F.3d 80, 88-89 (2d Cir. 2009); see also United States v. Whitehead, 567 F. App'x 758, 768 (11th Cir. 2014) ("First, we must determine whether law enforcement used an identification procedure that is both suggestive and unnecessary."), cert. denied, _ U.S. _, 135 S. Ct. 308 (2014).

If the court determines that the procedure was impermissibly suggestive, it "must then determine whether the identification procedure created a substantial likelihood of misidentification" or whether the resulting identification is sufficiently reliable in the circumstances.  Smith, 459 F.3d at 1294 (quoting Russo, 796 F.2d at 1452) (internal quotation marks omitted).  To determine whether the identification was reliable under the totality of the circumstances, the court considers the following factors – "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and

the length of time between the crime and the confrontation." <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972).

The Court finds nothing unreasonable in the state court's rejection of Petitioner's constitutional claim on identification testimony. Although the one-person show-up was suggestive, it was not impermissibly so nor was it unreliable when Mr. Renfro had an adequate opportunity to observe the robber, described to the officer the robber's clothing and fishing rods (which matched Petitioner), was certain of his identification of Petitioner as the robber, and identified Petitioner within a short period of time after the crime was committed, while his memory was fresh. Further, using the show-up would have facilitated a quick release of Petitioner had Mr. Renfro not recognized him as the robber.

**B.**     **Ground Two:  Jury Instructions**

Before the case was submitted to the jury, the court denied Petitioner's request to charge the jury on the lesser included offense of theft by taking.  (Resp't Ex. 1/Part 3 at 94; Resp't Ex. 3b at 3, ECF No. 7-6).  The jury found Petitioner guilty of robbery as charged.  (Resp't Ex. 1/Part 3 at 100).  On direct appeal, Petitioner argued that the trial court misapplied Georgia law in denying his request to charge on the lesser included offense of theft by taking.  (Resp't Ex. 5 at 6).  The Georgia Court of

14

Appeals found that the trial court's decision complied with Georgia law.  Copeland, 325 Ga. App. at 671, 754 S.E.2d at 639.

Petitioner argues in this Court that he was denied his constitutional due process rights when the trial court denied his request to charge on the lesser included offense of theft by taking.  (Pet. at 5).  Respondent argues that federal review of this ground is barred because Petitioner procedurally defaulted it by neither raising nor exhausting this claim as a federal constitutional claim in state court and because he has not overcome his default.  (Resp't Br. at 6-8).

Petitioner raised and exhausted the jury instruction issue on direct appeal as a matter of state law, did not raise it as a federal constitutional due process claim, and thereby procedurally defaulted his federal due process claim.  Because Petitioner presents nothing to overcome his default, federal review is barred.

## IV.   **Certificate of Appealability ("COA")**

Pursuant to Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has

made a substantial showing of the denial of a constitutional right." A petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Lott v. Attorney Gen., 594 F.3d 1296, 1301 (11th Cir. 2010) (quoting Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).

> "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," . . . a certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

Jimenez v. Quarterman, 555 U.S. 113, 118 n.3 (2009) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

The undersigned recommends that a COA should be denied because there is no reasonable debate (1) that the state court's resolution of Petitioner's challenge to identification testimony warrants deference and (2) that Petitioner procedurally defaulted his remaining grounds. If the Court adopts this recommendation and denies a COA, Petitioner is advised that he "may not appeal the denial but may seek a

16

certificate from the court of appeals under Federal Rule of Appellate Procedure 22."

Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

**V.      Conclusion**

For the reasons stated above,

It is **RECOMMENDED** that the petition for a writ of habeas corpus [1] and a

COA be **DENIED** and that this action be **DISMISSED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**IT IS SO RECOMMENDED** this 26th day of November, 2014.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

17